IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLIFFORD S. SHEPHERD,

    Plaintiff,

v.                                                      CV 12-0351 WPL/CEG

PRECISION DRILLING COMPANY, L.P.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Clifford S. Shepherd worked for Precision Drilling Company, L.P on an oil rig for three years. Throughout this period, he was allegedly discriminated against on the basis of race, subject to a hostile work environment, and retaliated against for reporting the discrimination, all in violation of Title VII of the 1964 Civil Rights Act. (Doc. 1.) Precision Drilling moved for partial summary judgment on the grounds that part of his damages are barred by New Mexico's Workers Compensation Act ("WCA") and that he failed to exhaust his administrative remedies for his retaliation claim. (Doc. 46.) Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to have me serve as the trial judge in this matter and to resolve all dispositive motions. Having considered the facts and relevant law, I grant Precision Drilling's motion in part and deny it in part.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Precision Drilling operates oilfield drilling rigs. (Doc. 1 at 2; Doc. 5 at 2.) Shepherd worked as a motorman on an oil rig, where he worked shifts of twenty-eight days on the rig and

---

[1] Precision Drilling's motion provided a list of undisputed material facts (Doc. 46 at 1-2), which Shepherd never addressed in his response (Doc. 51; Doc. 65). I have supplemented these facts with the allegations contained in the complaint. I note that many of the allegations are likely in dispute.

fourteen days off, with work days lasting twelve and one-half hours. (Doc. 1 at 2; Doc. 5 at 2-3.) Kolby Henderson and Robert Bigham, both of whom are white, were Shepherd's supervisors (Doc. 1 at 3; Doc. 5 at 3), and Shepherd asserts that the two discriminated against him because he is African American. (Doc. 1 at 2.) Shepherd was the only African American working on his rig at the time. (*Id*. at 4.) Allegedly, Henderson constantly cursed and screamed at Shepherd and made him do additional work and the work of a "floor man," which falls outside of the duties of a motorman. (*Id*. at 3.)

On September 4, 2010, Shepherd was working with a driller when he sustained a head injury. (Doc. 46 at 1; Doc. 46 Ex. 2 at 3.) The two were working with heavy equipment including large chains and tongs. (Doc. 46 Ex. 2 at 3.) While Shepherd and the driller were handling a large chain, the chain came up from the floor quickly and hit Shepherd in the head, resulting in a cut across the lower half of his left eye brow. (*Id*. at 3, 5.) Shepherd claims that the driller "knew exactly what he was doing" and had intentionally targeted him because of his race. (*Id*. at 3.) He later filed a one-page report detailing the circumstances of the incident but omitting that he believed the act was racially motivated. (*Id*. at 5; Doc. 46 at 2.) Shepherd's injury was treated at Nor Lea Hospital (Doc. 46 Ex. A at 1), and workers' compensation covered his medical bills (Doc. 46 at 1-2; Doc. 46 Ex. B at 4). After the incident, he signed an authorization release and a workers' compensation notice. (Doc. 46 Ex. B at 4.)[2]

When Shepherd reported the discriminatory behavior to his supervisors, Bingham, Henderson, and Brandon Dexter, all of them laughed about the incidents. (Doc. 1 at 4.) Shepherd asked to be transferred from the rig because of the hostile work environment and discrimination.

---

[2] The signed release and notice are not in the record, but Shepherd admitted to signing these documents during his deposition. (Doc. 46 Ex. B at 4.)

(*Id*.) He was never transferred, but after he made the request, he was terminated from his job for abandonment of the workplace, which he claims was pretextual. (*Id*.)

February 18, 2011, after his termination, Shepherd filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). (Doc. 46 Ex. C at 2.) He filled out a standardized form provided by the EEOC, checking a box to indicate that the complaint was for discrimination based on race. (*Id*.) In a blank space on the form, Shepherd wrote:

> I was a Motorman and worked on a drilling rig . . . . I was made to do work that White Motormen did not have to do. In October[] 2010, I complained about this disparity to my supervisors, Mr. Kolby Henderson, White, Driller, and Mr. Robert Bigham, White, Rig Manager, who laughed at me and told me I needed to keep doing this work. I voiced my concerns to another supervisor, Mr. Brandon Dexter, White, Derrick-man, and he told me the reason I was treated unequally was because I was Black. I told my other two supervisors about this incident, but nothing changed. On or about January 19th, 2011, I was off-shift and attempted to obtain medications on my company's medical benefit card and discovered I had been terminated for job abandonment on December 21st, 2010. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id*.)

The EEOC issued a Dismissal and Notice of Rights on January 12, 2012, informing Shepherd of his right to sue. (Doc. 57 Ex. 1.) Shepherd timely filed this lawsuit in federal court, alleging discrimination and hostile work environment based on his race and retaliation for reporting the discrimination and requesting to be transferred to another rig. (Doc. 1.) Shortly after Precision Drilling filed the present motion for partial summary judgment, Shepherd moved to amend his compliant to include claims under 42 U.S.C. § 1981. (Doc. 53.) I denied his motion to amend because of undue delay without a sufficient explanation. (Doc. 70.) Since Shepherd's initial response to the motion for summary judgment relied on the success of his motion to amend, I permitted him to file a new response. (*Id.* at 7.) However, he declined to do so by the

indicated deadline, and Precision Drilling filed a Notice of Briefing Complete on March 29, 2013. (Doc. 75.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 facilitates the entry of judgment without a trial when the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In considering the facts, the court must construe all facts in the light most favorable to the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## DISCUSSION

Precision Drilling moves for partial summary judgment on Shepherd's claims for damages relating to his head injury after the chain incident and on Count IV for Retaliation. (Doc. 46 at 1.) Precision Drilling argues that Shepherd's claims for damages relating to his injury are barred by the WCA. (*Id*. at 2.) With respect to the claim of retaliation, Precision Drilling argues that it was not presented in Shepherd's EEOC complaint, so it is barred by the doctrine of administrative exhaustion. (*Id*. at 3.)

### I.  Damages & the WCA

Under New Mexico law, the WCA is the exclusive remedy for disabling injuries occurring in the work place. N.M. STAT. ANN. § 52-1-6(E) (2012) ("The [WCA] provides exclusive remedies. No cause of action outside the [WCA] shall be brought by an employee or

dependent against the employer . . . for any matter relating to the occurrence of or payment for any injury or death covered by the [WCA].") However, the WCA cannot bar claims that are not contemplated by the scope of the WCA, such as claims of discrimination, spoliation of evidence, and retaliatory discharge. *Fuerschbach v. Sw. Airlines Co.* 439 F.3d 1197, 1213-14 (10th Cir. 2006); *Sabella v. Manor Care*, 915 P.2d 901, 905 (N.M. 1996) (holding that the WCA does not bar a state law sex discrimination claim even when the victim received workers' compensation for injuries sustained from discriminatory behavior). Moreover, the WCA cannot displace federal anti-discrimination laws because it would violate the Supremacy Clause of the United States Constitution. *Roberts v. Roadway Express*, 149 F.3d 1098, 1105 (10th Cir. 1998).

The exclusivity clause of the WCA is not without any effect in a subsequent Title VII action, though. The victim of discrimination may not recover damages for physical injuries, emotional distress, or any non-economic damages that he suffered as the result of being physically injured when he has already been fully compensated for his injuries by workers' compensation. *Id.* (holding that a plaintiff "may not recover under federal statutes for injuries already remedied under state law."); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t 'goes without saying that the courts can and should preclude double recovery by an individual.'" (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980))). This does not prohibit the victim from recovering damages for injuries for which he was not compensated or damages relating to the federally-prohibited discrimination such as race discrimination or retaliation. *Roberts*, 149 F.3d at 1105.

Precision Drilling challenges Shepherd's attempts to obtain damages for his head injury at work since he was compensated under the WCA. (Doc. 46 at 2-3.) Although weakly and vaguely asserted, I begin with Precision Drilling's suggestion that since Shepherd's initial report

of the accident did not mention discrimination or intentional harm, he is not entitled to recover damages relating to this incident under Title VII. (*Id*.) However, Shepherd's deposition testimony and interrogatories reflect his belief that the incident was not accidental and that the other employee intentionally acted in a manner that would result in the chain flying up and hitting Shepherd in the head. (Doc. 46 Ex. A at 3; Doc. 46 Ex. B at 3.) Shepherd also testified that he believed that the other employee was motivated by racial animus. (Doc. 46 Ex. B at 3.) Shepherd's testimony on the matter coupled with his other allegations of racial hostility creates a genuine issue of material fact that the incident resulted from racial discrimination.

I turn now to consider whether the WCA bars any of Shepherd's damage claims resulting from the chain incident. Interrogatory No. 3 from Precision Drilling's first set of interrogatories asked Shepherd to identify each item of damages he is claiming in the action. (Doc. 46 Ex. A at 3.) Among the items listed, Shepherd included two weeks of back pay in addition to medical expenses as a result of injury from the chain incident. (*Id*.) His deposition clarifies that workers' compensation covered his medical bills. (Doc. 46 Ex. B at 4), but there is no evidence in the record to show that workers' compensation covered other damages, such as back pay for lost work time.[3] Since the WCA does not displace Shepherd's right to recover damages for racial discrimination, it cannot bar Shepherd from seeking damages for discrimination here. However, Shepherd may not recover twice; workers' compensation already covered his medical expenses, so he may not seek those damages in this lawsuit. It is unclear whether Shepherd is entitled to or received compensation for back pay in connection with this incident. Since I must construe all

---

[3] Precision Drilling attached only a portion of Shepherd's deposition transcript. On the last line of the last page provided by Precision Drilling, Shepherd is asked "You didn't lose any wages as a result of," but the remainder of the question and the answer were not provided. (Doc. 46 Ex. B at 4.) Shepherd's statement following the incident states that he received stitches "and then went back to work" (*id*. at 5), but this does not clarify if he went back to work immediately, or if he took time off. Shepherd does not clarify any of these points in his response brief.

facts in favor of the non-moving party, and since Shepherd's interrogatories indicate he is entitled to two weeks of back pay, I will allow him to seek these damages as well as any other damages for discrimination not previously covered by the WCA.

## II.  Exhaustion of the Retaliation Claim

A plaintiff's failure to exhaust administrative remedies renders a district court without subject matter jurisdiction over a case. *Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997). Under Title VII, administrative exhaustion requires that a plaintiff file charges with the EEOC and receive a right-to-sue letter. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012). Charges of discrimination must contain the name of the person making the charge, information on the individual or company against whom the charge is made, a statement of facts regarding the unlawful employment practices, and the dates on which the practice or act occurred. *See* 42 U.S.C. 2000e-5(b) (holding charges must be made in writing, under oath, and contain all information as the Commission requires); 29 C.F.R. § 1601.12(a) (detailing the necessary information of a charge).

When a complaining individual files a complaint, he or she may complete a Charge of Discrimination form, which contains a check-the-box section in which the filer may indicate the reason for the alleged discrimination. (Doc. 46 Ex. C.) For example, the party may check a box for discrimination based on race, sex, and/or religion. (*Id.*) When the complaining party fails to check a particular box, there is a presumption that the complaining party is not asserting a claim represented by the unchecked boxes. *See Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). However, this presumption may be overcome if the text detailing the allegations clearly sets forth the claim. *Id*. In *Grunnel*, the Tenth Circuit held that the employee properly filed a charge with the EEOC for sex discrimination and retaliation, even though she

only marked the box for "retaliation" on her EEOC Charge of Discrimination form. *Id*. The court believed that the initial EEOC complaint did not sufficiently allege sex discrimination because it was "merely a prelude, an explanation leading up to the gist of her complaint of retaliation." *Id*. However, the employee filed a supplemental complaint two months after the original that stated in part, "I was subject to a continuing pattern and practice of sexual harassment by [Defendants] . . . continuing up to at least April 16, 1993." *Id*. at 1258. The court held that this statement met the requirements of filing a charge of sexual harassment because "[t]he allegation in the supplement, though sparse, identifies the type of discrimination complained of, the alleged harasser, and an approximate time period, and thus is minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirements." *Id*. at 1260.

*Zinke v. Slater* applied the rule outlined in *Grunnel* to a claim of discrimination based on gender, a hostile work environment, and retaliation for taking administrative action. *See* 34 F. App'x 667 (10th Cir. 2002) (unpublished). In 1998, Zinke filed a formal EEO complaint alleging that the her employer retaliated against her for reporting sexual harassment. *Id*. at 670. The facts contained in the complaint mentioned an instance of sexual harassment in 1991, her report of the complaint, and the fact that she was denied a promotion on three other occasions. *Id*. She also only checked the box for retaliation. *Id*. at 672. Relying on *Grunnel*, the court held that there was a presumption that she was not asserting claims of hostile work environment or gender discrimination because she had not marked the related boxes on the form. *Id.* The factual description that she had provided did not reference any hostile work environment or gender discrimination issues, so she failed to rebut the presumption. *Id*. The court held that the EEOC could not have been on notice of the hostile work environment or gender discrimination claims

when it reviewed her complaint, so Zinke did not properly exhaust her administrative remedies. *Id.* at 673. The court affirmed the decision to dismiss the claims for lack of subject matter jurisdiction. *Id.*

While *Zinke* is not binding precedent, it is helpful to consider the case in conjunction with *Grunnel* in order to determine whether the text of Shepherd's EEOC Charge of Discrimination satisfies the notice requirements, and thus, whether Shepherd has adequately exhausted his administrative remedies. While *Grunnel* holds that the district court must consider the text of a complaint to see if the bare elements of notice are met, *Zinke* shows that there must be some clear reference to the nature of the discrimination or the presumption is not rebutted.

Shepherd only marked the box for race and not the box for retaliation in his Charge of Discrimination form. (Doc. 46 Ex. C.) The text supporting his claim is sparse, briefly stating that he was treated differently and that he was told that this was because of his race. (*Id.*) He states that he complained to supervisors about this, but nothing changed. He then summarily states that he was fired for job abandonment after the incident. (*Id.*) At no point does he explicitly state that he was fired as a result of his complaints; in fact, he does not claim that the reason for his termination, job abandonment, was in any way pretextual or retaliatory.

After considering the complaint, which explicitly alleges retaliation and calls the termination pretextual, it is possible to infer retaliation in Shepherd's Charge of Discrimination form. However, such an inference would be an error, since the analysis is not whether I, having read Shepherd's pleadings, can liberally construe a retaliation claim from the text of Shepherd's original charge; the question is whether the EEOC would have been on notice of a claim of retaliation. This means considering only the information provided in the Charge of Discrimination and nothing more. Focusing on the text of Shepherd's Charge form, I find this

case to be more like *Zinke* than *Grunnel*. Shepherd failed to mention retaliation, and he never claimed or suggested that his termination was the result of his complaints to his supervisors, so the EEOC was not on notice of his retaliation claim. Accordingly, Shepherd never exhausted his administrative remedies with respect to this claim, leaving me without subject matter jurisdiction to hear it. I must dismiss this claim without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.")

## CONCLUSION

Precision Drilling has correctly noted deficiencies in some of Shepherd's claims and is entitled to partial summary judgment. The WCA does not bar Shepherd's discrimination claims, but it does bar double recovery. I grant in part and deny in part Precision Drilling's motion with respect to his damages from his head injury and only prohibit Shepherd from seeking damages that have already been covered by workers' compensation. I also grant the motion with respect to Shepherd's claim of retaliation since he did not properly exhaust his administrative remedies, and I dismiss this claim without prejudice.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.